[Cite as *State v. Clinton* , 2014-Ohio-5099.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 13AP-751<br>(C.P.C. No. 10CR-7472) |
| Marvin D. Clinton, | : | |
| Defendant-Appellant. | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on November 18, 2014

*Yeura R. Venters*, **Public Defender, and** *David L. Strait*, **for appellee.**

*Ron O'Brien*, **Prosecuting Attorney, and** *Steven L. Taylor*, **for appellant.**

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} Marvin D. Clinton is appealing from his conviction for murder with a firearm specification and repeat violent offender specification. His appointed counsel has filed a brief which contains six assignments of error. Clinton has filed a supplemental brief pro se which contains two assignments of error.

{¶ 2} The assignments of error in counsel's brief are:

[I.] Appellant was denied a fair trial by the introduction of inflammatory, irrelevant, inherently prejudicial testimony.

[II.] The trial court erred by admitting expert opinion testimony contrary to the Ohio Rules of Evidence.

[III.] R.C. 2929.14(B)(2)(a) and 2941.149 violate the right to trial by jury guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.

[IV.] The trial court committed plain error by sentencing Appellant as a repeat violent offender without making the findings required by R.C. 2929.14(B)(2)(a).

[V.] The judgment of the trial court is not supported by sufficient, credible evidence.

[VI.] The judgment of the trial court is against the manifest weight of the evidence.

{¶ 3} Clinton's assignments of error are:

APPELLANT'S RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED HIM UNDER THE UNITED STATES CONSTITUTION'S SIXTH AMENDMENT AND ARTICLE I SEC. 10 OF THE OHIO CONSTITUTION WAS VIOLATED WHEN HIS TRIAL COUNSEL FAILED TO PERFORM IN A MANNER CONSISTENT WITH HIS DUTIES AS COUNSEL.

APPELLANT'S RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED HIM UNDER THE UNITED STATES CONSTITION [sic] SIXTH AMENDMENT AND ARTICLE 1 SEC. 10 OF THE OHIO CONSTITUTION WAS VIOLATED WHEN HIS TRIAL COUNSEL FAILED TO PRESENT A DEFENSE IN SUPPORT OF APPELLANT'S RIGHTS TO A FAIR TRIAL.

{¶ 4} There is no dispute that someone shot and killed Kelsey Ray Ellis on December 18, 2010. Clinton denied being the shooter. The primary issue at the jury trial centered on the proof of the identity of the shooter and the jurors were convinced beyond a reasonable doubt that Clinton was the shooter. The jury therefore rendered guilty verdicts as to murder with a firearm specification and as to tampering with evidence.

{¶ 5} Because of Clinton's past criminal record, he was also charged with having a weapon under disability ("WUD") and with a repeat violent offender specification ("RVO"). The WUD charge and RVO were tried to the judge who presided over the trial in

order to avoid the potential of the jury being influenced by Clinton's past criminal record. The judge found Clinton guilty of both and sentenced him in accord with his findings.

{¶ 6} Turning to the assignments of error, the fifth and sixth assignments of error question the weight and sufficiency of the evidence before the jury. After careful review of the evidence, we find the evidence sufficient to prove Clinton was the shooter. We also find the verdicts consistent with the manifest weight of the evidence.

{¶ 7} When reviewing the sufficiency of the evidence to support a conviction, an appellant court must examine the evidence that, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 8} When there is conflicting evidence, "it [is] the function of the jury to weigh the evidence and assess the credibility of the witnesses in arriving at its verdict. Where reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question for the trier of fact. It is not the function of an appellant court to substitute its judgment for that of the factfinder." *Jenks* at 279.

{¶ 9} A manifest weight argument, in contrast to a claim of insufficient evidence, requires us to engage in a limited weighing of the evidence to determine whether there is enough competent and credible evidence so as to permit reasonable minds to find guilt beyond a reasonable doubt and, thereby, to support the judgment of conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In so doing, the court of appeals, sits as a " 'thirteenth juror' " and, after " 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id*.

{¶ 10} Issues of witness credibility and concerning the weight to attach to specific testimony remain primarily within the province of the trier of fact, whose opportunity to

make those determinations is superior to that of a reviewing court. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). The question is whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Hancock*, 108 Ohio St.3d 57, 63, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction. *Thompkins* at 387.

{¶ 11} A jury may "take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Nivens*, 10th Dist. No. 95APA09-1236 (May 28, 1996). "Furthermore, it is within the province of the jury to make the credibility of witnesses. ('It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness')." (Citations omitted.) *State v. Dillon*, 10th Dist. No. 04Ap-1211, 2005-Ohio-4124, ¶ 15.

{¶ 12} The evidence showed that in the early morning hours of December 18, 2010, Kelsey Ray Ellis's Cadillac Escalade collided with a two-toned green truck. The two drivers got out of their vehicles and a heated discussion occurred. The driver of the truck shot Ellis and then drove away. Marvin Clinton was arrested in a two-toned green truck later that morning. Clinton denied being involved in the shooting but the truck he was driving was clearly identified as being the truck which struck Ellis's Escalade, as proved by both an eyewitness and by analysis of the damage to the two vehicles.

{¶ 13} Gunshot residue testing indicated that Clinton had recently fired a gun. Testimony from witnesses in the neighborhood where the shooting occurred, testified about Clinton owning a firearm and showing it to them. Clinton even stated he was going to use the gun to rob a drug dealer who lived nearby.

{¶ 14} The green truck which Clinton was driving contained a magazine which was consistent with holding and firing ammunition such as the bullet and projectile which killed Ellis.

{¶ 15} The evidence, while not overwhelming, was sufficient to support the jury's conclusion that Clinton was the person driving the truck which was in a collision with

Ellis's Escalade. The evidence also indicated that the drivers got into a heated disagreement. Only one person was in the truck. Clinton was consistently the driver of the truck, despite not being the titled owner. Linking this testimony with the evidence that Clinton had recently fired a gun, as evidenced by gunshot residue testing, provided sufficient proof that Clinton had been the driver of the truck and that he shot Ellis after the argument.

{¶ 16} There was little evidence that Clinton was not the shooter. A few eyewitnesses claimed they had never known Clinton to possess or use a firearm, but their testimony did not come from knowledge of what happened the night Ellis was shot.

{¶ 17} Accordingly, the verdicts were consistent with weight of the evidence.

{¶ 18} The fifth and sixth assignments of error are overruled.

{¶ 19} We turn next to Clinton's pro se assignments of error and his claim he was denied the effective assistance of trial counsel.

{¶ 20} A counsel's performance "will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard or reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus.

{¶ 21} The question is whether counsel acted outside the "wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Appellate courts must be highly deferential in scrutinizing counsel's performance. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight. * * * There are countless ways to provide effective assistance in any given case." *Id.*

{¶ 22} The eighth assignment of error, which is Clinton's second pro se assignment of error, attacks the failure of trial counsel to present more defense evidence at the trial. The fundamental problem for defense counsel was Clinton's history of criminal offenses involving violence. The obvious person to be the centerpiece of the defense case was Clinton himself, but putting Clinton on the witness stand would have exposed his past history of shooting people and robbing people to the jury.

{¶ 23} No one else who witnessed the events of December 18, 2010 claimed Clinton was not the shooter. There was very little additional evidence trial counsel could potentially present, so counsel could not be deemed ineffective for failing to present it.

{¶ 24} The eighth assignment of error is overruled.

{¶ 25} The arguments in Clinton's supplemental brief as to his first assignment of error primarily attack trial counsel's failure to object more at trial. Specifically, Clinton points to the failure of counsel to object when a witness said she would not go into Clinton's residence because a cousin had said he had heard Clinton was a sex offender. Ideally counsel would have asked the trial court judge to tell the jury the statement was not proof Clinton was a sex offender, but the family rumor could not have possibly caused the jury to reach a verdict of guilty of murder. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Id.* To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694.

{¶ 26} Defense counsel did not ignore the comment by the witness. Instead, counsel used the comment as a basis for attacking the witness's credibility in general, especially her credibility when she gave testimony which indicated Clinton was the shooter.

{¶ 27} In his assignment of error, Clinton also attacks the failure of counsel to object when police officers mentioned the presence of broken glass at the collision scene. However, the presence of broken glass was not significant given the clear testimony of an eyewitness that the truck Clinton was driving was the same truck involved in the collision.

{¶ 28} Clinton also attacks the failure of trial counsel to have DNA testing on some cigarette butts found at the scene of the shooting. No one claimed the shooter was smoking that night, so the identity of who had smoked cigarettes at another time was not relevant evidence. Trial counsel was not ineffective for failing to pursue irrelevant evidence.

{¶ 29} Finally Clinton attacks the failure of counsel to more vigorously question the finding that an RVO specification applied. Clinton does not question the fact that he has a history of violent offenses, only the procedure used in finding him guilty as an RVO. The

merits of this allegation are addressed elsewhere in this opinion, but trial counsel's failure to object will not affect our handling of that issue and does not indicate that trial counsel was ineffective.

{¶ 30} The seventh assignment of error is overruled.

{¶ 31} The first assignment of error has been addressed to a large extent above. The comment by a witness that she had been told by a cousin that Clinton had a record for a sex offense could have been handled differently by trial counsel and the trial judge, but could not conceivably have affected the verdicts of guilty. Legitimate trial tactics are not a basis for establishing ineffective assistance of counsel for purposes of the Sixth Amendment to the United States Constitution.

{¶ 32} The first assignment of error is overruled.

{¶ 33} In the second assignment of error, appellate counsel argues that the testimony about gunshot residue being found on Clinton's hands did not meet the threshold for reliability required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

> [U]nder Fed.R.Evid. 702, that expert scientific testimony is admissible if it is reliable and relevant to the task at hand. To determine reliability, the *Daubert* court stated that a court must assess whether the reasoning or methodology underlying the testimony is scientifically valid. In evaluating the reliability of scientific evidence, several factors are to be considered: (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance. Although these factors may aid in determining reliability, the inquiry is flexible. The focus is "solely on principles and methodology, not on the conclusions that they generate."

(Citations omitted.) *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 611-12 (1998), quoting *Daubert*; *See* Ohio Evid.R. 702(C).

{¶ 34} We simply disagree with appellate counsel. The testimony of Max Laryani, the expert who testified about gunshot residue, was anything but junk science. He explained in detail what he was looking for in the way of chemicals and why the presence of those chemicals were indicative of Clinton having recently fired a firearm.

{¶ 35} The samples obtained from Clinton were clearly from his hands. No testimony indicated that Clinton's hands came in contact with residue from burned gunpowder any way other than Clinton having just recently fired a gun. No testimony indicated there was gunshot residue in the police cruiser when Clinton was detained before he was transported to jail.

{¶ 36} The second assignment of error is overruled.

{¶ 37} The third assignment of error attacks the finding of the applicability of the RVO specification as a violation of Clinton's Sixth Amendment rights. The issue of guilt as to an RVO specification was submitted to the trial court judge at the request of all counsel. Thus there was no need for the jury to act as fact-finder. *State v. Hunter*, 123 Ohio St.3d 164, 2009-Ohio-4147, ¶ 33. Further, the certified judgment entries showing Clinton's past criminal convictions are conclusive proof of his criminal history. When designating an offender as a repeat violent offender, a trial court does not violate the Sixth Amendment by considering relevant information about the offender's prior conviction that is part of the judicial record. *Id.* at ¶ 38.

{¶ 38} The third assignment of error is overruled.

{¶ 39} The same facts apply to our analysis of the fourth assignment of error. Clinton's record is clear and the procedure used in this case was one agreed to by all the parties in the trial court. Moreover, there is no plain error because the statutory language relied upon by appellant was stricken in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856 and that language has not been specifically reenacted by the General Assembly.

{¶ 40} The fourth assignment of error is overruled.

{¶ 41} All the assignments of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.

———————————